## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DiAnn Lyons, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 4:12-cv-02506 |
| v. | § | |
| | § | Judge Nancy F. Atlas |
| MMC Group, LP, *et al.*, | § | |
| | § | |
| Defendants. | § | |


## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE

## **TABLE OF CONTENTS**

Table of Authorities...........................................................................................iii

INTRODUCTION ........................................................................................... 1

**FACTUAL HISTORY** ................................................................................. **2**

    I.      Relevant Procedural Summary ..................................................... 2

    II.     Statement of Facts........................................................................ 3

        A.  The Parties.......................................................................... 3

             1.      Defendants and their work with the FDIC ............................ 3

             2.      Plaintiff and the Opt-in Plaintiffs........................................... 4

        B.  Plaintiff and the Putative Class Were All Subject to the Same
           Compensation Method .................................................... 5

**ARGUMENT** ................................................................................................ **6**

    I.    The Standard for Condition Certification at the Notice Stage is Lenient ............... 7

    II.   Plaintiff Has Satisfied Her Lenient First-stage Burden of Showing that She
        and the Putative Class Are "Similarly Situated." .................................. 10

        A.  Many Individuals Are Aggrieved by Defendants' Unlawful Compensation
           Practice ................................................................................ 11

        B.  Plaintiff Is Similarly Situated to the Aggrieved Members of the Putative
           Class because They Were All Victims of Defendants' Uniform
           Compensation Practice ....................................................... 12

             1.   Plaintiff's claims arise from Defendants' common compensation
                 practice that was uniformly applied to all putative plaintiffs............... 12

             2.   Job duties and job titles are irrelevant in this case because
                Plaintiff's claim is premised on Defendants' failure to satisfy the
                "salary basis" test .............................................................. 13

        C.  There Are Numerous Individuals Interested in Joining this Lawsuit.............. 17

III.   The Court Should Authorize Judicial Notice to the Putative Collective Class ...... 17

    A.  The Statute of Limitations Continues to Run on the Putative Plaintiffs'
    Claims ................................................................................................. 18

    B.  Court-approved Notice Promotes Judicial Economy .................................... 19

IV.   Plaintiff's Proposed Judicial Notice is Accurate and Informative ........................ 20

V.   The Court Should Compel Defendants to Produce Information Necessary for
Plaintiff to Disseminate Judicial Notice to the Putative Collective Class ............... 22

CONCLUSION ............................................................................................... 23

**CERTIFICATE OF CONFERENCE ........................................................... 24**

# TABLE OF AUTHORITIES

**CASES**

Atkins v. Gen. Motors Co., 701 F.2d 1124 (5th Cir. 1983) ............................................. 18

Bongat v. Fairview Nursing Care Ctr., 341 F. Supp. 2d 181 (E.D.N.Y. 2004) ............... 18

Carey v. 24 Hour Fitness USA, Inc., 2012 WL 4857562 (S.D. Tex. Oct. 11, 2012).. 10, 21

Crain v. Helmerich & Payne Int'l Drilling Co., 1992 WL 91946
    (E.D. La. April 16, 2002) ...................................................................... 12

Douglas v. GE Energy Reuter Stokes, 2007 WL 1341779 (N.D. Ohio Apr. 30, 2007) ... 23

Eggelston v. Sawyer Sportsbar, Inc., 2010 WL 2639897 (S.D. Tex. June 28, 2010) ....... 21

Falcon v. Starbucks Corp., 580 F. Supp. 2d 528 (S.D. Tex 2008) ................................... 20

Fisher v. Mich. Bell Tel. Co., 665 F. Supp. 2d 819 (E.D. Mich. 2009) ........................... 19

Foraker v. Highpoint Sw., Servs., L.P., 2006 WL 2585047
    (S.D. Tex. Sept. 7, 2006) ................................................................. 9, 12

Garcia v. Freedom Mortg. Corp., 2009 WL 3754070 (D.N.J. Nov. 2, 2009) .................. 22

Gee v. Suntrust Mortg., Inc., 2011 WL 722111 (N.D. Cal. Feb. 18, 2011) ...................... 22

Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835 (N.D. Cal. 2010) ............................. 22

Heeg v. Adams Harris, Inc., 2012 WL 5381767 (S.D. Texas, Oct. 31, 2012) ........... *passim*

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989) .................................... *passim*

In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III),
    2012 WL 3308880 (S.D. Tex. Aug. 10, 2012) .................................................... 7, 8

Johnson v. Big Lots Stores, Inc., 2007 WL 5200224 (E.D. La. Aug. 21, 2007) ............... 8

Lewis v. Huntington Nat'l Bank, 789 F. Supp. 2d 863 (S.D. Ohio 2011) ....................... 21

Lewis v. Huntington Nat'l Bank, 2011 WL 8960489 (S.D. Ohio June 20, 2011) ...... 20, 21

Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987) ..................................................... 8

Maynor v. Dow Chem. Co., 671 F. Supp. 2d 902 (S.D. Tex. 2009) ................................. 16

iii

Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995) ........................................ 8, 9

Musarra v. Digital Dish, Inc., 2008 WL 818692 (S.D. Ohio Mar. 24, 2008) ................. 21

Nobles v. State Farm Mut. Auto. Ins. Co., 2011 WL 5563444
    (W.D. Mo. Nov. 15, 2011) ..................................................................................... 21

O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567 (6th Cir. 2009)..................... 10, 12, 13

Pereira v. Foot Locker, Inc., 261 F.R.D. 60 (E.D. Pa. 2009) ............................................ 22

Ryan v. Staff Care, Inc., 497 F. Supp. 2d 820 (N.D. Tex. 2007) ...................................... 10

Sandoz v. Cingular Wireless LLC, 553 F.3d 913 (5th Cir. 2008) ..................................... 18

Scholtisek v. Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005) .......................................... 15

Stephenson v. Info. Providers, Inc., 2010 WL 2132804 (D. Minn. May 7, 2010)............ 16

Swarthout v. Ryla Teleservices, Inc., 2011 WL 6152347 (N.D. Ind. Dec. 12, 2011) ...... 22

Swigart v. Fifth Third Bank, 276 F.R.D.  210 (S.D. Ohio 2011) ...................................... 21

Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447 (S.D.N.Y. 2008) .................. 14

Torres v. Gristede's Operating Corp., 2006 WL 2819730
    (S.D.N.Y. Sept. 29, 2006) .............................................................................. 13, 16

Villatoro v. Kim Son Rest., L.P., 286 F. Supp. 2d 807 (S.D. Tex. 2003)............. 7, 8, 9, 12

Walker v. Honghua Am., LLC, 2012 WL 1601288 (S.D. Tex. May 7, 2012) ................. 21

**STATUTES, REGULATIONS, AND RULES**

29 C.F.R. §§ 541.100(a)(1) ............................................................................................... 13

29 C.F.R. § 541.200(a)(1) .............................................................................................. 1, 13

29 C.F.R. §§ 541.300(a)(1) ............................................................................................ 3, 14

29 C.F.R. §§ 541.601(b)(1) ............................................................................................... 13

29 C.F.R. § 541.602(a) ...................................................................................................... 14

29 U.S.C. § 216(b)...................................................................................................... 1, 7, 18

29 U.S.C. § 255(a).............................................................................................................. 18

## INTRODUCTION

Plaintiff DiAnn Lyons ("Plaintiff") brings this Motion for Conditional Certification and Judicial Notice pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Plaintiff filed this lawsuit for unpaid overtime wages on behalf of herself and all other similarly situated individuals, against Defendants MMC Group, LP, C.D. Mitchell & Co., and Mir Mitchell & Co., LLP (collectively, "Defendants").

Plaintiff and the putative collective class are similarly situated for the simple reason that they were all subject to Defendants' uniform compensation practice of paying them on an hourly basis but paying only "straight time" for their overtime hours. Defendants' practice of paying an hourly rate precludes them from enjoying any of the FLSA's white-collar exemption defenses because they cannot satisfy the threshold "salary basis" requirement that exempt employees receive a guaranteed salary of not less than $455 per week.  See, e.g., 29 C.F.R. § 541.200(a)(1).

Because Defendants' "hourly plus straight time" compensation practice applied universally to every member of the putative class, this action clearly stems from a common practice applicable to all the putative plaintiffs.  And because Plaintiff's claim is based on Defendants' failure to satisfy the "salary basis" test, this case would not require the Court to examine the job duties or job titles of the putative plaintiffs (as in most FLSA cases).  Rather, the Court need only examine Defendants' records to determine the scope of the class, liability, and damages.

As detailed below, Plaintiff has submitted sufficient evidence to satisfy her burden of showing that she and the members of the putative collective class are "similarly

situated" under this this Court's lenient standard for conditional certification.  Plaintiff and the putative class were all victims of the same compensation practice and all allege the same injury.  Their claims are clearly bound by the same factual and legal nexus, and hearing them together would conserve the parties' resources and promote judicial efficiency.  This is precisely the type of case that should be conditionally certified.

Accordingly, Plaintiff respectfully requests that the Court grant this motion and (1) conditionally certify this case as a collective action; (2) order that judicial notice be sent to all putative collective class members; (3) approve the form, content and distribution plan for Plaintiff's proposed judicial notice; and (4) order Defendants to produce to Plaintiff's Counsel the contact information for each putative collective class member.

## FACTUAL BACKGROUND

### I.      Relevant Procedural Summary

On August 21, 2012, Plaintiff DiAnn Lyons filed this lawsuit for unpaid overtime against Defendants MMC Group, LP, C.D. Mitchell & Co., and Mir Mitchell & Co., LLP.  (Doc. # 1.)  Plaintiff worked for Defendants on projects assisting the Federal Deposit Insurance Corporation ("FDIC") with bank closings, receivership assistance and other related services.  In her Complaint, Plaintiff alleges that Defendants violated the FLSA, 29 U.S.C. § 201 et seq., by paying her on an hourly basis but failing to pay her time and a half overtime wages for the hours she worked in excess of forty per week— i.e., Plaintiff was paid "straight time" for her overtime hours.  (Id.)  Plaintiff brings this action on behalf of herself and all similarly situated individuals, alleging that they are

entitled to their unpaid overtime premiums, liquidated damages, attorneys' fees, and costs, among other damages.  (Id.)

Defendants responded to Plaintiff's Complaint on September 20, 2012.  (Doc. ## 15-16.)[1]  In their Answers, Defendants admit that "Plaintiff's compensation was based on hours worked."   (Doc. ## 15-16.)  Despite this admission, Defendants vaguely assert as an affirmative defense that Plaintiff is exempt from the overtime requirements of the FLSA, but fail to specifically state which exemption applies.   (Doc. ## 15-16.) Defendants also fail to explain how they could enjoy any exemption defenses when they paid Plaintiff on an hourly basis and therefore cannot satisfy the "salary basis" test.

II.   **Statement of Facts**

A.   **The Parties**

1.   Defendants and their work with the FDIC

Defendants are domestic companies, each with its principal place of business in Irving, Texas.  (Doc. ## 1, 15-16.)  Defendant MMC Group, LP provides professional services and workforce management solutions to companies and governmental organizations throughout the United States.  (Doc. # 1.)  Defendant Mir Mitchell & Company ("Mir Mitchell") provides outsourcing, consulting, and workforce management solutions to commercial, federal, state, and local clients nationwide.  (Doc. # 1.)  Mir Mitchell is owned by Defendant MMC Group.   (Doc. ## 15-16.)  Defendant C.D. Mitchell & Company ("C.D. Mitchell") is the employment and staffing partner for Mir

---

[1] Defendant C.D. Mitchell & Co. filed its Answer (Doc. # 15) separately from Defendants MMC Group, LP and Mir Mitchell & Co. (Doc. # 16).  All three companies assert that C.D. Mitchell is Plaintiff's true employer.  (Doc. ## 15-16.)

Mitchell, (Doc. ## 1, 15-16), and places personnel at clients' worksites in locations across the country. (Doc. ## 15-16). One such client was the FDIC. (Doc. ## 15-16.)

The FDIC provides deposit insurance to banks nationwide, and also supervises those banks for safety and soundness. (Declaration of Andrew G. Chase ¶ 4.) When a bank is critically undercapitalized or is unable to meet its obligations to depositors (called a "bank failure"), the FDIC closes the bank and is appointed as the bank's "receiver." (Id.) As a failed bank's receiver, the FDIC assumes the task of selling and collecting the bank's assets and settling its debts. During this period, the bank is "in receivership." (Id.)

In the wake of the 2008 financial crisis, the number of banks entering into receivership increased dramatically, and the FDIC began contracting with private firms, including Defendants, to assist with its receivership responsibilities. (Id.) Defendants employed "FDIC Contractors" like Plaintiff to perform these FDIC contracts at failed banks across the country. (Doc. ## 1, 15-16.)

### 2.   Plaintiff and the Opt-in Plaintiffs

Plaintiff DiAnn Lyons was employed by Defendants as an FDIC Contractor from November 2008 to April 2010. (Doc. # 1; Chase Decl. Ex. 2.) She worked for Defendants on an FDIC contract at Franklin Bank in Houston, Texas, assisting the FDIC with its receivership and asset management functions. (Id.) Throughout Plaintiff's employment, she was paid on an hourly basis and was paid straight time for her overtime hours. (Id.) Twenty-six (26) additional FDIC Contractors have joined this case as Opt-in

Plaintiffs by filing their written consent with the Court.[2]   (Chase Decl. ¶ 5.)   Like Plaintiff, these twenty-six Opt-in Plaintiffs also worked for Defendants on contracts assisting the FDIC with receivership, asset management and other services related to bank failures; regularly worked more than forty hours per week; were paid on an hourly basis; and received only straight time for their overtime hours. (Doc. # 1; Chase Decl. Exs. 1-19.).   Plaintiff and the Opt-in Plaintiffs, combined, worked for Defendants on FDIC contracts in at least twelve different states, including Alabama, California, Florida, Georgia, Illinois, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, and Washington.  (Chase Decl. ¶ 6.)

> **B.    Plaintiff and the Putative Class Were All Subject to the Same Compensation Method.**

Upon hire, FDIC Contractors received an offer letter from Defendants, which stated that they were to be paid per hour and listed their hourly rate.  (Chase Decl. Exs. 1-26.)  Yet Defendants classified FDIC Contractors as "exempt" from the FLSA's overtime requirements.  (Doc. ## 1, 15-16; Chase Decl. Exs. 1-19.)  Defendants' offer letters do not explain why or how the FDIC Contractors could be both paid an hourly rate and "exempt" employees.

FDIC Contractors regularly worked over forty hours in a workweek.  (Doc. # 1; Chase Decl. Exs. 1-19, 27-32.)  During any week in which they worked overtime, they were paid their hourly rate for all hours worked, including overtime.  (Id.)  That is, they

---

[2] The specific job titles held among Plaintiff and the Opt-in Plaintiffs were asset manager, senior asset manager, asset servicing professional, senior asset servicing professional, consultant, investigations professional, loan administration document management specialist, and receivership assistance contractor.  (Chase Decl. ¶ 7.)

were paid "straight time" for their overtime hours, rather than one and one-half times their hourly rate, as required by the FLSA.  (Doc. # 1; Chase Decl. Exs. 1-19, 31-32.)

Defendants required FDIC Contractors to record their work hours on timesheets, which were then submitted to company personnel.  (Doc. ## 15-16; Chase Decl. Exs. 1-19.)  FDIC Contractors did not receive a salary or a guaranteed weekly minimum payment.  (Chase Decl. Exs. 1-26, 31-32.)  Rather, they were paid only for the number of hours they worked each week, and their pay fluctuated depending on, and in direct correlation to, the precise number of hours they worked.  (Doc. # 1; Chase Decl. Exs. 1-19, 31-32.)

In addition to being subject to Defendants' compensation practice, FDIC Contractors' were also all subject to the same policies and guidelines promulgated and enforced by Defendants. (Chase Decl. Exs. 1-19.)

## ARGUMENT

Plaintiff moves the Court to conditionally certify this matter as a collective action and send court-authorized notice to the follow group:

> All individuals paid an hourly rate and "straight time" for overtime hours, and who work or worked for Defendants on projects supporting the FDIC with bank closings, receivership assistance, and other related services, at any time within three years of the date the Court grants this motion.

Conditional certification is appropriate here as Plaintiff is similarly situated to the members of the putative class.  Through the pleadings, declarations and supporting documents, Plaintiff has provided a factual basis that she and the putative class members were the victims of Defendants' uniform practice of compensating them on an "hourly

plus straight time" basis.  These aggrieved employees' claims are bound by Defendants' universally applicable (and unlawful) compensation plan, not from any circumstances purely personal to any one individual.  Accordingly, hearing these claims together would greatly promote judicial economy.  As set forth below, Plaintiff more than satisfies the lenient standard applied at this stage, and the Court should grant this motion and issue judicial notice of this lawsuit to the putative class.

I.     <u>The Standard for Conditional Certification at the Notice Stage Is Lenient.</u>

The FLSA specifically contemplates employees pursuing their claims collectively, stating that an action for unpaid overtime wages may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  <u>Id.</u>; <u>Villatoro v. Kim Son Rest., L.P.</u>, 286 F. Supp. 2d 807, 808-09 (S.D. Tex. 2003).  When a class is conditionally certified, notice of the lawsuit is provided to the putative class members, giving them the opportunity to file written consent to join the action, or "opt in."  <u>Villatoro</u>, 286 F. Supp. 2d at 809.

As the Supreme Court has explained, the FLSA's collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs, and decreasing the burden on the courts through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989). "These benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of

the collective action, so that they can make informed decisions about whether to participate." Id. Thus, district courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Id. at 170-71; see also Villatoro, 286 F. Supp. 2d at 809 (citing Hoffmann-La Roche).

To succeed on a motion for conditional certification, a plaintiff must show that she is "similarly situated" to the putative collective class members. Heeg v. Adams Harris, Inc., 2012 WL 5381767, at *3 (S.D. Texas, Oct. 31, 2012). The Fifth Circuit has not specifically defined "similarly situated" or addressed the appropriate methodology for undertaking that analysis. Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995). Most courts, however, including this one, have held that the "similarly situated" inquiry should be analyzed under the two-stage process set out in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987). See Villatoro, 286 F. Supp. 2d at 810 (adopting the Lusardi two-stage approach); see also Johnson v. Big Lots Stores, Inc., 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) ("Since Mooney, district courts in the Fifth Circuit have uniformly used [the Lusardi two-stage approach] to determine whether a collective [action] should be certified under the FLSA.")

At the first stage, the "notice stage," the standard for conditional certification is lenient. The court must decide whether the plaintiffs are similarly situated and if notice should be sent to potential class members. Mooney, 54 F.3d at 1213-14. The notice stage typically takes place before any discovery has been conducted; thus the court's decision is usually based only on the pleadings and affidavits. Villatoro, 286 F. Supp. 2d

at 809.  "Because the court has minimal evidence [at the notice stage], this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Mooney, 54 F.3d at 1214; Villatoro, 286 F. Supp. 2d at 809; Foraker v. Highpoint Sw., Servs., L.P., 2006 WL 2585047, at *3 (S.D. Tex. Sept. 7, 2006); Heeg, 2012 WL 5381767, at *3.

Courts do not consider the merits of the claims, resolve factual disputes, make credibility determinations, or decide substantive issues at the notice stage.  Villatoro, 286 F. Supp. 2d at 811; Foraker, 2006 WL 2585047, at *4 n.6.  Rather, these matters are considered after discovery, at the second stage, which is usually precipitated by the defendant's motion to decertify the collective class.  Mooney, 54 F.3d at 1214.  It is at the second stage where the court makes a factual determination on the similarly situated question, and decides whether the collective class should be decertified or whether the claimants can proceed to trial collectively.  Id.

At the notice stage, however, the plaintiff need only provide substantial allegations, supported by a factual basis, that the putative class members were together the "victims of a single decision, policy or plan."  Mooney, 54 F.3d at 1214 n. 8 (quotation and citation omitted); Villatoro, 286 F. Supp. 2d at 810.  Courts may emphasize finding some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency.  Foraker, 2006 WL 2585047, at *3.  Conditional certification and judicial notice are appropriate where such a factual or legal nexus exist.  Villatoro, 286 F. Supp. 2d at 810.  "Courts have favored collective actions when a plaintiff can establish that common issues of law and fact exist and arise

from the same alleged activity, because a collective action proceeding may 'reduce litigation costs for the individual plaintiffs and create judicial efficiency.'" <u>Heeg</u>, 2012 WL 5381767, at *3 (quoting <u>Ryan v. Staff Care, Inc.</u>, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007)); <u>see also</u> <u>O'Brien v. Ed Donnelly Enter., Inc.</u>, 575 F.3d 567, 585 (6th Cir. 2009) (stating "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy").

The notice-stage analysis requires plaintiffs to show three things: (1) that there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit. <u>Carey v. 24 Hour Fitness USA, Inc.</u>, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11, 2012); <u>Heeg</u>, 2012 WL 5381767, at *3.

## II. <u>Plaintiff Has Satisfied Her Lenient First-stage Burden of Showing that She and the Putative Class Are "Similarly Situated."</u>

The evidence clearly illustrates that Plaintiff and the members of the putative class are "similarly situated," making this case appropriate for conditional certification. These individuals were together the victims of Defendants' uniform practice of paying an hourly wage plus straight time for overtime hours. And because Defendants' pay practice violates the salary basis test, any differences in job duties or job titles are irrelevant to the Court's analysis.

In addition to the allegations in the Complaint, Plaintiff's motion is supported by her declaration, declarations from eighteen (18) Opt-in Plaintiffs, paystubs, timesheets,

and Defendants' own documents and admissions.  This evidence shows that Defendants' FDIC Contractors worked on the same types of FDIC contracts, were required to adhere to the same employment policies and guidelines, were uniformly classified as exempt, regularly worked more than forty hours per week, and most importantly, were all paid on an hourly basis and received straight time for their overtime hours.

### A.   Many Individuals Are Aggrieved by Defendants' Unlawful Compensation Practice.

The first element of the notice-stage analysis requires plaintiffs to show that other aggrieved individuals exist.  Heeg, 2012 WL 5381767, at *3.  The plaintiff's burden is low, and she "need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." Id.

There is no question that many people were subject to and injured by Defendants' hourly plus straight time compensation plan.  Twenty-six Opt-in Plaintiffs have joined Plaintiff in this case by filing written consent forms.  Plaintiff submitted her own declaration as well as declarations from eighteen Opt-in Plaintiffs, all of whom allege they were victims of Defendants' illegal pay practice.  Moreover, because Defendants' pay plan was uniformly applied to all FDIC Contractors, there are many more individuals out there who have been denied proper overtime pay, and who would benefit from notice of this lawsuit.  Plaintiff easily satisfies this first element.  See Heeg, 2012 WL 5381767, at *4 (finding this element satisfied where the two plaintiffs submitted an affidavit from only one other individual).

**B.** **Plaintiff Is Similarly Situated to the Aggrieved Members of the Putative Class because They Were All Victims of Defendants' Uniform Compensation Practice.**

The second element of the notice-stage inquiry requires plaintiffs to show that the aggrieved individuals are "similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." Heeg, 2012 WL 5381767, at *3. Plaintiff and the putative class here were together the victims of Defendants' single, unlawful practice of paying an hourly wage plus straight time for overtime hours, and are thus similarly situated.

Plaintiffs are similarly situated when they are affected by a common policy, plan, pattern or practice. Id. at *4. Complete uniformity is not necessary, however. Id. "[A] plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" O'Brien, 575 F.3d at 546-47. "Notice is appropriate when there is 'a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" Villatoro, 286 F. Supp. 2d at 810 (quoting Crain v. Helmerich & Payne Int'l Drilling Co., 1992 WL 91946, at *2 (E.D. La. April 16, 2002). When such a factual or legal nexus exists, hearing the claims together promotes judicial efficiency, and conditional certification is appropriate. Villatoro, 286 F. Supp. 2d at 810; Foraker, 2006 WL 2585047, at *3.

1. Plaintiff's claims arise from Defendants' common compensation practice that was uniformly applied to all putative plaintiffs.

Plaintiff and the putative class members' claims are bound by the factual and legal nexus that they were all victims of Defendants' commonly-applied and unlawful

- 12 -

compensation practice. The evidence leaves no question that Defendants uniformly paid the Plaintiff and the putative class on an hourly basis and paid them straight time for their overtime hours. This fact alone—that the plaintiffs suffered from a single, FLSA-violating policy—demonstrates that they are similarly situated and that conditional certification should be granted. See O'Brien, 575 F.3d at 585. In addition, all plaintiffs also worked on the same types of FDIC projects, were subject to the same employment policies and guidelines, were classified as exempt, and regularly worked more than forty hours per week.

       2.     <u>Job duties and job titles are irrelevant in this case because Plaintiff's claim is premised on Defendants' failure to satisfy the "salary basis" test.</u>

The central feature that ties the putative plaintiffs together is that they were all compensated under the same "hourly plus straight time" system. Defendants' FLSA-violating compensation method is the factual and legal nexus that binds the potential plaintiffs' claims; it is the "single, decision, policy, or plan" of which the putative class members were victims. Because the Plaintiff's claim rests on the allegation that Defendants' compensation practice violated the salary basis test, the plaintiffs' job duties and job titles are irrelevant to the Court's "similarly situated" analysis.

In order for an employee to qualify for any of the FLSA's "white collar" exemptions, she must satisfy both a "duties test" **and** a "salary basis" test. Torres v. Gristede's Operating Corp., 2006 WL 2819730, at *10-11 (S.D.N.Y. Sept. 29, 2006) (hereinafter "Torres I"); see also 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1), 541.601(b)(1) (all stating that an employee must be "[c]ompensated on a

salary basis of not less than $455 per week"). Unless the employee meets both tests, she cannot be considered "exempt." See id.; Bongat v. Fairview Nursing Care Ctr., 341 F. Supp. 2d 181, 186 (E.D.N.Y. 2004); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 461 (S.D.N.Y. 2008) (hereinafter "Torres II") (holding that defendants cannot claim white-collar exemptions where class members were not paid on a salary basis).

An employee is considered to be paid on a salary basis if she "regularly receives each pay period . . . a predetermined amount constituting all or part of [her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Plaintiff and the Opt-in Plaintiff's did not receive a predetermined amount each week. (Chase Decl. Exs. 1-19, 31-32.) Rather, they were paid only for the number of hours they worked, and their pay fluctuated with the number of hours they worked. (Id.) That is, their compensation was subject to reduction based on the quantity of work performed; thus, they cannot satisfy the salary basis test. Because Defendants cannot satisfy the salary basis test, there is no need to examine the duties test. Torres II, 628 F. Supp. 2d at 461 n.13 (finding it unnecessary to address the duties test after already holding that defendants violated the salary basis test); Bongat, 341 F. Supp. 2d 181, 186 (E.D.N.Y. 2004) ("Since defendant has not demonstrated the plaintiffs were paid on a salary basis, an analysis of the duties test is unnecessary.").

This is not a misclassification case where courts must look at the employees' job duties. Nor is this an off-the-clock case where courts have to examine whether and why the employees did not record all their work hours, or whether there were differences

- 14 -

based on location or manager.  Nor is this a case where the employees are challenging the employer's failure to enforce a facially lawful practice of paying for overtime.  Rather, the heart of this case is Plaintiff's allegation that Defendants uniformly applied the same facially *unlawful* compensation practice to all FDIC Contractors and that the same pay practice caused the same injury for which Plaintiff and the Opt-in Plaintiffs now seek relief.  This practice applied regardless of job title, job duties, supervisor, or geographic location.  Therefore, this case would not involve any individual inquiries because differences in job titles or job duties are irrelevant.  The Court need only examine Defendants' records to determine the scope of the class, liability, and damages.

Other courts have granted conditional certification in similar cases.  For example, in Scholtisek v. Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005), the court granted conditional certification for a plaintiff who alleged that his employer had violated the FLSA by failing to satisfy the salary basis test.  The Scholtisek court distinguished the "similarly situated" analysis in that case from the analysis used in most FLSA cases, which involve claims for unpaid overtime by employees who claim they have been wrongly classified as exempt.  Id. at 389.  In those cases, the court said, "the purported class members' job duties, and any dissimilarities among them, will often be relevant to whether the employees are similarly situated."  Id.  In contrast, the court held that job duties were irrelevant because the plaintiff's claim centered on allegations that his employer had violated the salary basis test.  Id.  In granting the plaintiff's motion for conditional certification, the court explained:

> That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to plaintiff's claims.  What *is* important is that these employees were allegedly subject to a common practice or scheme on [the defendant's] part of docking salaried employees' pay in violation of the [salary basis test of] FLSA.

Id. at 389-90 (emphasis in original).  Other courts have reached similar conclusions.  See Torres I, 2006 WL 2819730, at *10-11 (granting conditional certification in salary basis case and stating that "[g]iven [defendant's] practice of treating co-managers and department managers as hourly workers, it is irrelevant that some individual plaintiffs or others similarly situated may have assumed duties that would otherwise make them exempt"); Stephenson v. Info. Providers, Inc., 2010 WL 2132804, at *4 (D. Minn. May 7, 2010) (conditionally certifying class of employees paid on "fee basis" where all the putative class members were governed by the same policies, compensated in the same manner and classified as exempt); Maynor v. Dow Chem. Co., 671 F. Supp. 2d 902, 931-32 (S.D. Tex. 2009) (denying decertification and stating that differences in in the plaintiffs' employment settings were unimportant where the unlawful practice applied to every plaintiff regardless of individual circumstances).

The claims in this case are not purely personal to Plaintiff; they arise from a common set of facts and a universally-applicable compensation method that affected each member of the putative class.  The Court need not examine the putative plaintiffs' job duties or job titles because Defendants' compensation practice violates the salary basis test.  Plaintiff, the Opt-in Plaintiffs and anyone who joins this case will advance the same

claims and seek the same relief.  As a result, certifying this case as a collective action and hearing these claims together would promote judicial efficiency.

### C.    There Are Numerous Individuals Interested in Joining this Lawsuit.

The last element of the notice-stage analysis requires plaintiffs to show that aggrieved similarly situated individuals want to opt-in to the lawsuit.  Carey, 2012 WL 4857562, at *1; Heeg, 2012 WL 5381767, at *3.  Plaintiff has already shown that other aggrieved individuals exist and that she is similarly situated to them.  She easily satisfies this last element, as twenty-six similarly situated individuals have *already* opted into this case.  Clearly there is interest in joining this lawsuit.  As stated above, since Defendants' pay plan applied to all persons working on FDIC contracts, there are many more individuals out there who have been denied proper overtime pay and who would benefit from court-authorized notice of this case and the opportunity to join.

### III.    The Court Should Authorize Judicial Notice to the Putative Collective Class.

The United States Supreme Court has stated that the judicial system benefits from collective actions when "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Hoffmann-La Roche, 493 U.S. at 170.  In Hoffmann-La Roche, the high court encouraged district courts to become involved in the notice process early, to ensure "timely, accurate, and informative" notice, and to help maintain control of the litigation.  Id. at 171-72.  It went on to state that judicial notice is proper in "appropriate cases," noting that the district court's retain discretion to determine whether a particular case is appropriate.  Id. at 169-70.

Judicial notice is appropriate here for two primary reasons.  First, timely notification of this lawsuit is necessary to preserve the claims of potential plaintiffs because the statute of limitations continues to run until they file written consent with the Court.  Second, judicial notice promotes judicial economy and conserves the parties' resources by helping to avoid the duplicative lawsuits.

Because Plaintiff has demonstrated that she is "similarly situated" to Defendants' FDIC Contractors, the Court should exercise its discretion and authorize Plaintiff to send judicial notice to the putative collective class.

### A.    The Statute of Limitations Continues to Run on the Putative Plaintiffs' Claims.

The putative collective class members' claims in this case continue to shrink with each day that passes, and there is a real risk that many of their their claims will completely lapse due to the FLSA's statute of limitations.[3]  Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members when the complaint is filed, the statute of limitations in an FLSA collective action is not tolled when the action is filed or even once conditional certification is granted.  29 U.S.C. § 216(b); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 916-17 (5th Cir. 2008).  Rather, the statute of limitations continues to run on each individual's claim until he or she files written consent with the Court to join the action.  Atkins v. Gen. Motors Corp., 701 F.2d 1124, 1130 n.5 (5th Cir. 1983); see also 29 U.S.C. § 216(b) ("No employee shall be a

---

[3] The statute of limitations for FLSA violations extends back a minimum of two years, but may extend back an additional year if the employer's violation was willful. 29 U.S.C. § 255(a).

party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the notice process itself does not stop the statute of limitations, it does, at a minimum, notify the putative collective class members of the case and that the statute of limitations is running on their claims. Fisher v. Mich. Bell Tel. Co., 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009) (citing Hoffmann-La Roche, 493 U.S. at 170).

Prompt court action and judicial notice are particularly important in this case because the putative class members' claims are at risk of lapsing due to the statute of limitations. In most cases brought under the FLSA, the claims of current employees do not diminish due the statute of limitations because for every day the statute runs, the violation continues along with their employment. Thus, as long as they remain employed, their claims do not diminish. In this case, however, the bulk of the FDIC Contractors' work—and thus, the bulk of their claims—took place during the height of the financial crisis, between 2008 and mid- to late-2010. As a result, the claims of each putative collective class member diminish by the day, and some risk expiring completely. Accordingly, promptly notifying these individuals of this lawsuit is essential to preserving their claims.

### B.    Court-approved Notice Promotes Judicial Economy.

Collective adjudication of this case will save the Court's time and resources, and the parties and will avoid disparate rulings that would undoubtedly arise if each class member were to file individual suits.

Collective actions under the FLSA promote judicial economy by helping to avoid the "multiplicity of duplicative suits" inherent in these types of lawsuits.  Hoffmann-La Roche, 493 U.S. at 170.  Judicial notice discourages class members from filing numerous identical suits and instead allows them to pursue their claims in one case.  See id.  As a result, judicial notice lowers litigation costs for individual plaintiffs and decreases the burden on the courts through "efficient resolution in one proceeding of common issues of law and fact."  Id.; see also Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 533-34 (S.D. Tex. 2008).    These benefits depend on employees receiving accurate and timely notice concerning the collective action, so that they can make informed decisions about whether to participate.  Id.

## IV.    Plaintiff's Proposed Judicial Notice is Accurate and Informative.

Judicial notice must be "timely, accurate, and informative."  Hoffmann-La Roche, 493 U.S. at 172.  Plaintiff's proposed Judicial Notice accomplishes just that.  (Chase decl. Ex. 33.)  Plaintiff's Notice has been carefully drafted to advise the putative collective class of the lawsuit, the nature of the dispute, and their right to join.  As such, it should be adopted by the Court.

In addition to mailing the judicial notice, Plaintiff requests that the Court permit Plaintiff's Counsel to distribute the Notice via email, attached as a pdf file.[4]  It is well settled that district courts have broad discretion over how to facilitate judicial notice.  See

---

[4] Attaching the notice to the email as a pdf file, rather than typed into the body of the email, reduces the concerns that the form or content of the notice could be easily altered and forwarded to other people.  See Lewis v. Huntington Nat'l Bank, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011).

Hoffmann-La Roche, 493 U.S. at 170.  Courts across the country, including this one, have authorized sending judicial notice via email.  See, e.g., Walker v. Honghua Am., LLC, 2012 WL 1601288, at *8 (S.D. Tex. May 7, 2012) (ordering defendant to produce putative plaintiffs' email addresses); Eggelston v. Sawyer Sportsbar, Inc., 2010 WL 2639897, at *4 (S.D. Tex. June 28, 2010) (same); Swigart v. Fifth Third Bank, 276 F.R.D. 210, 215 (S.D. Ohio 2011) (authorizing distribution of judicial notice via email); Lewis, 2011 WL 8960489, at *2 (same); Nobles v. State Farm Mut. Auto. Ins. Co., 2011 WL 5563444, at *2 (W.D. Mo. Nov. 15, 2011) (finding email notice to be a "useful means of reaching putative class members").

Sending notice by email is appropriate in this case for two reasons.  First, as discussed above, time is of the essence for potential plaintiffs due to the statute of limitations.  See Lewis v. Huntington Nat'l Bank, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).  Distributing notice via email will expedite the process of notifying the putative class.  Second, the mailing addresses for former employees are less likely to be accurate, and allowing Plaintiff's Counsel to distribute notice via email will increase the likelihood that potential plaintiffs will receive at least one copy of the notice.  Lewis, 2011 WL 8960489, at *2.

Plaintiff also asks the Court to order a 90-day notice period for the putative class members to join the case, a length that is commonly approved by courts.  See, e.g., In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III), 2012 WL 3308880, at *29 (S.D. Tex. Aug. 10, 2012) (granting conditional certification and ordering 90-day notice period); Musarra v. Digital Dish, Inc., 2008 WL 818692, at *7 (S.D. Ohio Mar. 24,

2008); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 68-69 (E.D. Pa. 2009) (stating "a 90-day [opt-in] period is reasonable"); Garcia v. Freedom Mortg. Corp., 2009 WL 3754070, at *1 (D.N.J. Nov. 2, 2009) (ordering a 120-day opt-in period). Lastly, Plaintiff also asks the Court to authorize her to re-send the notice or a reminder letter on or about day sixty of the notice period to any putative class member who has not responded to the notice. Reminder letters serve to remind those persons who wish to join to do so within the notice period. They also help to reach those persons whose notices were misplaced, not received, or unopened to still have a fair opportunity to join. Moreover, reminder letters will lower the number of late opt-ins, thus reducing the Court's burden of deciding whether late opt-ins should be allowed to join. Courts routinely allow for reminder notices, and this Court should do so here. See Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (authorizing notice reminders); Gee v. Suntrust Mortg., Inc., 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (same); Swarthout v. Ryla Teleservices, Inc., 2011 WL 6152347, at *3 (N.D. Ind. Dec. 12, 2011) (same).

**V.      The Court Should Compel Defendants to Produce Information Necessary for Plaintiff to Disseminate Judicial Notice to the Putative Collective Class.**

Should the Court grant Plaintiff's motion, it should also order Defendants to provide Plaintiff with a list of all putative class members and their last-known contact information. The United States Supreme Court has made it clear that such discovery is permissible, and courts in this Circuit have endorsed this position. Heeg, 2012 WL 5381767, at *8; Walker, 2012 WL 1601288, at *8; Eggelston, 2010 WL 2639897, at *4. Identifying these individuals is necessary for Plaintiff to accurately, efficiently and

quickly distribute judicial notice.  See Hoffmann-La Roche, 493 U.S. at 170.  Accurate and efficient distribution of judicial notice is precisely why courts routinely order defendants to produce such lists in FLSA cases.  See id. at 165; see also Heeg, 2012 WL 5381767, at *8   (compelling defendant to produce list of putative class members); Walker, 2012 WL 1601288, at *8 (same); Eggelston, 2010 WL 2639897, at *4 (same); Douglas v. GE Energy Reuter Stokes, 2007 WL 1341779, at *5 (N.D. Ohio Apr. 30, 2007) ("As a practical matter notification of potential plaintiffs suggests allowing discovery of the names of persons similarly situated . . . , and a number of courts permit such discovery.") (collecting cases).[5]

Plaintiff requests that the Court order Defendants to produce to Plaintiff's Counsel, within ten (10) days of an order granting this motion, a list in Microsoft Excel format of all individuals employed by Defendants as FDIC Contractors at any time within three years of the date the Court issues an order on this motion.

The list should include each employee's full name; last known address, telephone number, and personal email address; employee identification number; social security number (last four digits only); and dates of employment.

## CONCLUSION

This case is appropriate for conditional certification. Plaintiff has satisfied her lenient first-stage burden of demonstrating that she is similarly situated to the putative

---

[5] Moreover, the identity of putative class members is discoverable on other grounds. See Hoffmann-La Roche, 493 U.S. at 170 (acknowledging the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter").

collective class because they were uniformly misclassified as exempt, worked long hours without receiving proper overtime pay, were paid under the same compensation method, and received an hourly wage plus straight time for overtime.  For these reasons and all those stated above, Plaintiff respectfully requests that the Court grant this motion and (1) conditionally certify this case as a collective action; (2) authorize Plaintiff to send judicial notice to the putative collective class; (3) approve the form, content and distribution plan for Plaintiff's proposed judicial notice; and (4) compel Defendants to produce a list of the putative collective class members.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, the undersigned hereby certifies that counsel for Plaintiff conferred with counsel for Defendants regarding the filing of this motion during the parties' 26(f) Conference conducted via telephone on October 19, 2012, and Defendants confirmed that they oppose this motion.

*s/ Andrew G. Chase*
Andrew G. Chase, MN Bar No. 0391935

RESPECTFULLY SUBMITTED:

Dated: November 13, 2012          **NICHOLS KASTER, PLLP**

*s/ Andrew G. Chase*
Paul J. Lukas, MN Bar No. 22084X*
Andrew G. Chase, MN Bar No. 0391935*
Attorneys-In-Charge
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
achase@nka.com
(*admitted pro hac vice*)

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE FLSA COLLECTIVE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 13, 2012 a true and correct copy of **Plaintiff's Motion for and Memorandum in Support of Conditional Certification and Judicial Notice** and all supporting documents were served via electronic mail to the following counsel of record:

R. Rogge Dunn
Bryan C. Collins
Joshua J. Iacuone
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, TX 75270
Rogge@righttowork.com
bcollins@clousedunn.com

Dated: <u>November 13, 2012</u>          **NICHOLS KASTER, PLLP**

_s/ Andrew G. Chase_____
Paul J. Lukas, MN Bar No. 22084X*
Andrew G. Chase, MN Bar No. 0391935*
Attorneys-In-Charge
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
achase@nka.com
(*a*dmitted pro hac vice*)